IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 128,882

In the Matter of LUANN K. TRUMMEL,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held December 16, 2025. Opinion filed May 8, 2026. Published censure.

*Kate Duncan Butler*, Deputy Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*Luann K. Trummel*, respondent, argued the cause pro se.

PER CURIAM: This is an attorney discipline proceeding against Luann K. Trummel, of Hutchinson, who was admitted to practice law in Kansas in October 1993.

On September 19, 2024, the Disciplinary Administrator's office filed a formal complaint against Trummel alleging violations of the Kansas Rules of Professional Conduct, stemming from Trummel's representation of a client in a child custody matter. It alleged violations of KRPC 1.1 (2026 Kan. S. Ct. R. at 326) (competence), 1.3 (2026 Kan. S. Ct. R. at 330) (diligence), 1.4 (2026 Kan. S. Ct. R. at 331) (communication), 1.15 (2026 Kan. S. Ct. R. at 370) (safekeeping client property), 8.1(b) (2026 Kan. S. Ct. R. at 429) (duty to disclose material facts in disciplinary proceedings), and Supreme Court Rule 210 (2026 Kan. S. Ct. R. at 262) (duty to assist the disciplinary process).

1

Trummel filed an answer to the formal complaint on October 18, 2024. A hearing on the formal complaint was held on November 20, 2024. The Disciplinary Administrator appeared through counsel Kate Duncan Butler. Trummel appeared pro se. At the hearing, the Disciplinary Administrator withdrew the alleged KRPC 1.1 violation.

The panel found Trummel violated KRPC 1.3 (diligence), 1.4 (communication), 1.15 (safeguarding client property), 8.1(b) (duty to disclose), and Rule 210 (duty to assist). It unanimously recommends Trummel be disciplined by published censure.

FACTUAL AND PROCEDURAL BACKGROUND

The panel's final hearing report details its factual determinations and legal conclusions. It provides:

"*Findings of Fact*

. . . .

"17. In July 2022, K.H. hired respondent to represent him in a child custody matter. K.H. was attempting to be granted joint custody.

"18. K.H. lives in Maryland. He hired respondent to represent him because he believed the child's mother lived in Hutchinson, Kansas, where respondent is located.

"19. K.H. and respondent initially spoke on the phone.

"20. At the formal hearing K.H. testified that he spoke with Trummel one or two more times; but he never communicated with her verbally after he paid his retainer.

"21. K.H. paid respondent a $600 retainer by check. His fee agreement with

2

respondent, signed on July 5, 2022, specified that the deposit covered the first four hours of representation.

"22. Respondent deposited this check in a bank account ending in 3428 on July 13, 2022.

"23. The bank account ending in 3428 is not the account listed with attorney registration as respondent's trust account. Respondent's trust account ends in 3429.

"24. Bank account records for the trust account ending in 3429 show two debit card purchases made in Pueblo, Colorado, in August 2022. One of these purchases was refunded in the same month.

"25. Shortly after his check was deposited, K.H. became aware of an online portal available from respondent's office. K.H. believed that he could use this portal to view updates about his case.

"26. K.H. and respondent provided different testimony regarding this portal. K.H. testified that respondent informed him of the portal and explained that this portal had K.H.'s information on it and that it was a way for him to follow progress on his case. K.H. testified that he would log in to view the portal frequently but did not see any changes, updates, or progress on his case.

"27. K.H. testified that after roughly six months his access to the portal no longer worked.

"28. For her part, respondent testified that giving K.H. access to an online portal was a mistake. Although the billing software that respondent was using included the portal functionality as a feature, respondent did not regularly use the portal feature and did not use it to communicate with clients. Respondent said that giving K.H. access to the portal was an inadvertent mistake and that once it was discovered the portal access was revoked. Respondent described it as akin to toggling a switch.

"29. From the time K.H. paid respondent in July 2022 until December 2022 he attempted to contact respondent via telephone and email. Each time, his calls went to voicemail, and his calls and emails were not returned.

"30. K.H. never received any billing statements from respondent.

"31. K.H. never received any communication from respondent that she was terminating the attorney-client relationship.

"32. In her answer to the formal complaint, respondent said she talked to K.H. on a phone call in which she said she had been unable to locate the other party; but respondent conceded that she was unable to locate specific records to corroborate that conversation.

"33. In her cross-examination of K.H. respondent asked K.H. if he recalled a phone call in which respondent told K.H. that respondent had been unable to locate the other party. K.H. said he did not recall such a conversation.

"34. Respondent testified at the formal hearing that she had attempted to locate the other party based on the information she received from K.H. but had been unable to do so.

"35. Respondent testified she visited the address of the other party that K.H. had provided. Respondent testified that from the street the residence did not appear occupied.

"36. Respondent testified that she did not ring the doorbell and she did not attempt to speak to neighbors. She only observed the residence and believed it to be unoccupied, based on her visual observation.

4

"37. Respondent conceded that she did not follow up with K.H. when she did not receive any further information from him regarding the location of the other party.

"38. Respondent admitted that she did not formally terminate her attorney-client relationship with K.H.

"39. At the time of the formal hearing in this matter on November 20, 2024, K.H. had not seen any progress on his custody matter. K.H. testified that he was actively looking for new attorneys at the time of the formal hearing.

"40. K.H. submitted a complaint to the Office of the Disciplinary Administrator (ODA) on December 27, 2022. The ODA docketed the complaint for investigation.

"41. Respondent submitted a written response to K.H.'s complaint in January 2023. Respondent said she could not initiate the paternity case for K.H. because he had failed to provide current contact information for the opposing party.

"42. In her response, respondent did not say whether she had informed K.H. that she needed additional information from him to file the case.

"43. The response did not contain any information regarding billing and whether respondent had performed any work to earn the $600 deposited into her operating account.

"44. Bradley Dillon initially investigated the complaint for the ODA. Dillon sent letters to respondent on March 7 and April 20, 2023, each time requesting that respondent reply in writing.

"45. Respondent did not reply to his letters.

"46. Dillon also left a message at respondent's office asking her to contact him. Respondent did not contact him.

5

"47. In November 2023, Tim Schilling, ODA special investigator, began his own investigation and attempted to contact respondent.

"48. Schilling sent written correspondence to respondent's most recent address on record with attorney registration and most recent email address on record with attorney registration. Respondent's home and work address on record with attorney registration were the same.

"49. Respondent did not respond to Schilling.

"50. On November 27, 2023, Schilling called the most recent phone number for respondent on record with attorney registration. Someone answered the call and Schilling heard a voice that sounded like a child's voice in a moving vehicle.

"51. Schilling attempted to talk to the person who answered the phone, but no one responded. Schilling heard someone on the call remark that the call came from Topeka. The call disconnected after about 30 seconds.

"52. Schilling called back but went directly to voicemail. Schilling left a message but respondent did not call him back.

"53. Respondent's first contact with the ODA following her initial response to the complaint on September 19, 2024, was when she appeared via Zoom videoconference at the prehearing conference on October 15, 2024.

"54. During the prehearing conference the hearing panel reminded respondent of her obligation to file an answer to the formal complaint, and the panel set deadlines for submission of exhibits.

"55. Following the prehearing conference, respondent communicated with the disciplinary administrator and met with an investigator from the office, Tim Schilling, via

Zoom videoconference.

"56. Respondent refunded K.H. his $600 with a check dated November 14, 2024.

"*Respondent's testimony regarding trust account*

"57. Respondent testified she had been in practice since being admitted in 1993. Respondent worked in child support enforcement for 16 years for the State of Kansas before entering into a partnership with a local attorney in 2010. Respondent then left the partnership and began a solo practice in 2014.

"58. Respondent testified she mainly practices domestic law and child in need of care (CINC) cases. Respondent testified she has had staffing difficulties following the COVID-19 pandemic.

"59. Respondent testified that she primarily serves a low-income and underserved client base who cannot come up with large retainers and that she normally charges a $600 retainer and establishes a payment plan.

"60. Regarding the trust account and operating account, respondent conceded the retainer check had been improperly deposited into the operating account, the account number which ended in 3428, and not the trust account.

"61. Respondent testified at the time of the deposit she had done some preliminary work on K.H.'s case to locate the other party and had driven to the address provided but had not done any other work.

"62. Respondent testified that she did not have records demonstrating the time spent on the case.

"63. Respondent testified she did not send K.H. an invoice or billing statement.

"64. Respondent conceded that the account ending [in] 3429 was not properly set up as a trust account. The bank account signature card and the bank statement for this account did not show the account was a trust account.

"65. However, respondent had treated the account as a trust account.

"66. Respondent testified that she would normally deposit client retainers into the account ending [in] 3429 and would keep records—separate from the bank statements— to indicate which clients those funds belonged to.

"67. Respondent testified the account had been set up under her previous partnership before that partner left and respondent became a solo practitioner. Respondent had assumed the account had been set up correctly as a trust account.

"68. Respondent testified that, at the time of the formal hearing, she was in the process of converting the account into a trust account and was working with bank personnel to do so properly.

"69. The bank statement for this account reflected a charge for a hotel, which was refunded a short time later. Respondent testified that she had inadvertently charged a hotel to the wrong account and corrected it when she realized the mistake, because it was not a business expense associated with a client.

"70. Respondent testified she did not send the refund check to K.H. until November 2024 because at first she was unsure of how to proceed and later she was unsure if it was appropriate until she talked to Schilling, who advised her she could refund the fee.

"*Respondent's testimony regarding participation in the disciplinary process*

"71. Respondent acknowledged her failure to participate in the disciplinary process before the prehearing conference on October 15, 2024. Respondent

8

acknowledged that she failed to respond to inquiries from Bradley Dillon and Tim Schilling.

"72. Respondent testified that she did not have a good reason to explain why she did not communicate or respond to K.H. 'I let other things get in the way and then I . . . didn't respond.'

"73. Respondent testified that her failure to participate in the disciplinary process prior to October 15 was due to anxiety. Respondent said she was afraid of the outcome because she had a prior diversion agreement, that she was 'flailing,' that she knew she could not provide a satisfactory answer as to why she had not handled K.H.'s case appropriately, and that she did not know what to do or how to make things better.

"74. Respondent testified that, following the initiation of the disciplinary process, she has been diagnosed with anxiety and has been receiving treatment and medications for it.

"75. Respondent did not submit any exhibits or present any witnesses in her case, and did not present any evidence regarding her anxiety diagnosis.

"*Respondent's prior diversion*

"76. The disciplinary administrator offered Exhibits 11 and 12, which was a prior diversion respondent entered into on August 14, 2019. The initial diversion encompassed two complaints, case numbers DA 13,202 and DA 13,227.

"77. Case DA 13,202 arose from respondent's representation of an incarcerated client in a child in need of care (CINC) case; respondent failed to communicate and diligently prosecute the matter and the client ultimately was appointed new counsel.

"78. Case DA 13,227 arose from respondent's representation of a client in a child support modification matter. The complainant engaged respondent and paid a $600

9

retainer fee to negotiate a child support modification; respondent successfully negotiated a child support reduction but failed to communicate the outcome and failed to provide a requested accounting.

"79. Respondent stipulated to violations of KRPC 1.4 (communication) and KRPC 1.15 (safekeeping client property).

"80. On October 13, 2020, the diversion agreement was extended to cover another case, DA 13,467, for actions that took place before the previous diversion but were not known at the time.

"81. That complaint arose from respondent's representation of a client in a divorce case. Respondent failed to timely file a journal entry of judgment, which included an award of attorney fees from the opposing party. Respondent did not get the award of attorney fees approved by the court until February 2020.

"82. As part of the diversion, respondent stipulated to violations of KRPC 1.3 (diligence) and KRPC 3.2 (expediting litigation).

"83. Respondent successfully completed those diversions and this completion was prior to the conduct in K.H.'s case.

"*Conclusions of Law*

"84. Based upon the findings of fact, the hearing panel concludes as a matter of law that respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), 1.15 (safeguarding client property), 8.1(b) (duty to [disclose]), and Rule 210 (duty to assist).

"KRPC 1.3

"85. 'A lawyer shall act with reasonable diligence and promptness in representing a client.'

10

"86. Respondent failed to take actions in furtherance of K.H.'s matter. Respondent took no action to locate the other party beyond driving by an address she had been provided and deciding the property looked uninhabited. Respondent did not take any action to confirm the property was uninhabited and took no other action to locate the other party. There was conflicting testimony from respondent and K.H. as to whether they had a telephone conversation regarding respondent's failure to find the other party, but the evidence shows respondent failed to follow up with K.H. or respond to his voicemails and email inquiries after that and keep him informed of the status of his case. Because respondent failed to act with reasonable diligence and promptness in representing her client, the hearing panel concludes that respondent violated KRPC 1.3.

"KRPC 1.4

"87. KRPC 1.4(a) provides, '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' Respondent failed to communicate with K.H. following her attempt to locate the other party. The hearing panel concludes respondent violated KRPC 1.4(a).

"88. KRPC 1.4(b) provides, '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' Respondent's failure to communicate with K.H. resulted in his inability to take actions to further his cause for nearly two years.

"KRPC 1.15

"89. A lawyer must safeguard a client's property. KRPC 1.15(a) provides:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and

11

other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

"90. In this case respondent failed to properly safeguard K.H.'s property. Respondent deposited K.H.'s check of unearned fees into her operating account, instead of her attorney trust account. Respondent also failed to ensure her account was properly set up as a trust account. The hearing panel concludes that respondent failed to properly safeguard K.H.'s property by depositing the funds into her operating account in violation of KRPC 1.15(a).

"KRPC 8.1(b) and Kan. S. Ct. R. 210.

"91. Lawyers must cooperate with disciplinary investigations. KRPC 8.1(b) and Kan. S. Ct. R. 210 provide the requirements. '[A] lawyer in connection with a . . . disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . .[.]' KRPC 8.1(b).

"92. '(a) Duty to Assist. An attorney must assist . . . the disciplinary administrator in the investigation and prosecution of an initial complaint or a report, a docketed complaint, and a formal complaint and in other matters relating to the discipline of attorneys.

'(b) Duty to respond. An attorney must timely respond to a request from the disciplinary administrator for information during an investigation and prosecution of an initial complaint or a report, a docketed complaint, and a formal complaint.' Kan. S. Ct. R. 210 (2024 Kan. S. Ct. R. [at] 260).

"93. Respondent failed to respond to requests for information and attempts by investigators to contact her until the prehearing conference on October 15, 2024. The hearing panel concludes respondent violated KRPC 8.1(b) and Kan. S. Ct. R. [at] 210.

12

"94. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"95. *Duty Violated*. Respondent violated her duty to provide diligent representation and adequate communication. Respondent violated her duty to properly safeguard her client's property. Respondent violated her duty to the legal profession to cooperate in disciplinary investigations.

"96. *Mental State*. With respect to the violation of her duty of diligence, the hearing panel finds respondent acted knowingly. With respect to the violation of her duty to safeguard client's property, the hearing panel finds respondent acted negligently. With respect to the duty to cooperate with the disciplinary process, the hearing panel finds respondent acted knowingly. While the hearing panel recognizes that respondent's actions or inactions may have been exacerbated by her anxiety, respondent testified that she knew she should respond to K.H. as well as the disciplinary investigators but did not and thus those actions were knowing.

"97. *Injury*. As a result of respondent's misconduct, respondent caused injury to K.H.'s matter by delaying progress on his child custody matter. Respondent's failure to refund K.H.'s retainer until late in the disciplinary process deprived him of those funds for nearly two years.

"Aggravating and Mitigating Factors

"98. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. Rule 226(a)(1)(C)(i) (2024 Kan. S. Ct. R. [at] 279.) In reaching its recommendation for discipline, the hearing panel considered the aggravating factors described in Standard 9.22 and found the following

13

aggravating factors:

"99. *Prior disciplinary offenses.* Respondent has completed a prior diversion entered into August 14, 2019, in which she stipulated to violations of KRPC 1.3 (diligence), 1.4 (communication), 1.15 (safekeeping client property), and 3.2 (expediting litigation). This diversion is considered prior discipline under Rule 212(h)(2). (2024 Kan. S. Ct. R. [at] 262.)

"100. *Pattern of misconduct.* Respondent's conduct in prior disciplinary cases and in the current case reflect a pattern of failing to adequately communicate, diligently prosecute a client's matter, and a failure to properly secure client funds. Respondent has failed to address the shortcomings in her practices that have led to these violations.

"101. *Bad faith obstruction of disciplinary proceedings.* Respondent's failure to respond to the disciplinary administrator, to provide requested information, and to generally cooperate with the disciplinary investigation until late in the disciplinary process is considered an aggravating factor.

"102. *Substantial experience in the practice of law*. Respondent has been practicing law in Kansas since 1993. At the time of the misconduct, respondent had been practicing law for almost 29 years.

"103. *Indifference to making restitution*. Respondent's failure to return the client's funds until late in the disciplinary process shows an indifference to making restitution and is considered an aggravating factor. The panel is not swayed by respondent's explanation that she was waiting to be informed by the disciplinary administrator that it would be appropriate to refund the check because respondent could have inquired about making restitution earlier in the disciplinary process.

"104. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances present:

14

"105. *Absence of a dishonest or selfish motive*. The panel find[s] that respondent's actions with respect to the violations of her duties of competence and diligence were not motivated by a dishonest or selfish motive.

"106. *Personal or Emotional Problems*. Respondent testified that she suffered from anxiety and has begun receiving treatment for it. Respondent testified she became so overwhelmed by anxiety in this matter that she was unable to take action to respond to either K.H. or the disciplinary investigators. Respondent did not present any witnesses or evidence in support of her diagnosis; however, the hearing panel takes respondent at her word that her personal or emotional problems contributed to her violations.

"107. In addition to the above-cited factors in Standard 3, the hearing panel has thoroughly examined and considered the following Standards for each violation:

'4.4    Lack of diligence.'

'4.42   Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'4.43   Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

'4.44   Admonition is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.'

15

'4.1     Failure to preserve the client's property.'

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.'

'4.13    Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.'

'4.14    Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.'

'7.0     Violations of duties owed as a professional.'

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.'

'7.3     Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

'7.4     Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the lawyer's conduct violates a duty

16

owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.'

"*Recommendation of the Parties*

"108. The disciplinary administrator recommended informal admonition.

"109. Respondent concurred with the disciplinary administrator's recommendation.

"*Discussion*

"110. The hearing panel believes public censure is appropriate in this case in spite of the recommendation by the parties for admonition. Of particular concern to the hearing panel is respondent's failure to address issues which have previously led to disciplinary complaints, and respondent's seeming failure to appreciate the seriousness of the disciplinary process in the present case.

"111. Respondent has previously faced discipline for failures of communication, diligence, and safekeeping client property. The hearing panel believes censure is appropriate because respondent has failed to make changes in her practice to address those shortcomings.

"112. The hearing panel is also concerned that respondent has been an attorney for nearly 30 years at the time of the misconduct, and has been a solo practitioner for 10 years, and has failed to ensure her purported trust account was properly set up and has failed to implement appropriate recordkeeping practices to safeguard client funds.

"113. Finally, respondent's lack of participation in the disciplinary process and failure to present evidence in her case demonstrate a failure to recognize the seriousness of the violations and the disciplinary process. While the hearing panel takes respondent at

17

her word that her problems with anxiety contributed to her violations, the hearing panel finds that respondent's failure to participate in the disciplinary process and to present evidence or arguments in her case, at best, indicate a lack of understanding on respondent's part of the seriousness of her violations and the hearing panel has concerns that respondent is not taking necessary steps to correct her practice and behaviors to prevent similar violations in the future.

"114. The hearing panel stresses that in spite of the relatively low financial stakes at issue in this matter and in respondent's prior disciplinary cases, the injury to the clients she serves is no less serious. A low-income client may ill-afford to be deprived of even a relatively low retainer fee while progress in their legal matter grinds to a halt due to their attorney's inaction. In this case, K.H.'s attempt to gain joint custody of his child was stymied for two years due to respondent's failure to prosecute his case.

"115. The panel gave serious consideration to a recommendation of suspension per Rule 225(a)(3). (2024 Kan. S. Ct. R. [at] 278.) However, after careful consideration of the evidence and the Standards, the panel agrees that published censure is the appropriate discipline. To wit: reprimand is generally appropriate when an attorney's actions are negligent and causes actual or potential injury to a client or to the profession. The panel found in this case that two of respondent's violations were knowing, and one was negligent. However, the panel does agree that respondent's conduct was not malicious and was exacerbated by her anxiety. Thus, the panel recommends published censure.

"116. The hearing panel recognizes that because each case is unique, past sanctions provide little guidance and each disciplinary sanction is based on specific facts and circumstances of each case. *In re Jordan*, 316 Kan. 501, 550, 518 P.3d 1203 (2022). With that in mind, the panel takes note of *In re Beye*, 315 Kan. 857, 511 P.3d 963 (2022), in which the Kansas Supreme Court agreed with the hearing panel's recommendation of public censure for an attorney who failed to take any action or communicate with a client about the progress of a case for 10 months, failed to respond to the client's specific requests for information about the case, and deposited unearned fees into his operating account instead of his trust account.

18

"*Recommendation of the Hearing Panel*

"117. Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends public censure by the Supreme Court pursuant to Rule 225(a)(5). (2024 Kan. S. Ct. R. at 278.)

"118. Costs are assessed against respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court determines whether KRPC violations exist based on the evidence, the panel's findings, and the parties' arguments. If we find violations, the next step is to decide what discipline should be imposed.

Attorney misconduct must be established by clear and convincing evidence. See Kansas Supreme Court Rule 226(a)(1)(A) (2026 Kan. S. Ct. R. at 281); *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011). Clear and convincing evidence is evidence that leads a factfinder to believe the truth of the facts asserted is highly probable. 292 Kan. at 945.

Trummel was given adequate notice of the formal complaint, to which she filed an answer. She was given adequate notice of the hearings before the panel and this court and appeared at both proceedings. She filed no exceptions to the final hearing report, which means we adopt the findings and conclusions that are supported by clear and convincing evidence. Kansas Supreme Court Rule 228(g)(1) (2026 Kan. S. Ct. R. at 287); *In re Fulcher*, 319 Kan. 105, 117-18, 552 P.3d 1255 (2024) (a finding is deemed admitted, if

19

exception is not taken). We conclude Trummel's conduct violated KRPC 1.3, 1.4, 1.15, 8.1(b), and Rule 210.

As to the appropriate discipline, the Disciplinary Administrator recommended informal admonition to the panel. Trummel agreed with that. But the hearing panel recommends published censure because Trummel failed to make changes to her practice to address issues that brought about previous disciplinary complaints and failed to appreciate the seriousness of the disciplinary process in this matter. At oral argument, both Trummel and the Disciplinary Administrator changed their recommendations to published censure.

We hold Trummel should be disciplined by published censure.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Luann K. Trummel is disciplined with published censure in accordance with Supreme Court Rule 225(a)(5) (2026 Kan. S. Ct. R. at 280).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to Trummel and that this opinion be published in the official Kansas Reports.

LUCKERT, J., not participating.